Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

# UNITED STATES DISTRICT COURT

for the

Middle District of Florida

Tampa Division

| | |
|---|---|
| WILLIAM DOHERTY | Case No. _____ |
| | *(to be filled in by the Clerk's Office)* |
| *Plaintiff(s)* | |
| *(Write the full name of each plaintiff who is filing this complaint.* | Jury Trial: *(check one)* ☑ Yes ☐ No |
| *If the names of all the plaintiffs cannot fit in the space above,* | |
| *please write "see attached" in the space and attach an additional* | |
| *page with the full list of names.)* | |
| **-v-** | |
| INFUSERVE AMERICA, INC. | |
| *Defendant(s)* | |
| *(Write the full name of each defendant who is being sued. If the* | |
| *names of all the defendants cannot fit in the space above, please* | |
| *write "see attached" in the space and attach an additional page* | |
| *with the full list of names.)* | |

## COMPLAINT FOR A CIVIL CASE

**I.    The Parties to This Complaint**

   **A.    The Plaintiff(s)**

   Provide the information below for each plaintiff named in the complaint.  Attach additional pages if
   needed.

|  |  |
|---|---|
| Name | WILLIAM DOHERTY |
| Street Address | 603 NORTH 8TH ST |
| City and County | ALPINE, BREWSTER COUNTY |
| State and Zip Code | TEXAS 79830 |
| Telephone Number | 432 386 0481 |
| E-mail Address | WILLHDOHERTY@GMAIL.COM |

   **B.    The Defendant(s)**

   Provide the information below for each defendant named in the complaint, whether the defendant is an
   individual, a government agency, an organization, or a corporation.  For an individual defendant,
   include the person's job or title *(if known)*.  Attach additional pages if needed.

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

Defendant No. 1

| | |
|---|---|
| Name | INFUSERVE AMERICA, INC |
| Job or Title *(if known)* | Corporation |
| Street Address | 11880 28th St. North, Suite 200 |
| City and County | St. Petersburg, Pinellas County |
| State and Zip Code | Florida 33716 |
| Telephone Number | unknown |
| E-mail Address *(if known)* | unknown |

Defendant No. 2

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 3

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 4

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

## II.   Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power).  Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties.  Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case.  Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case.  In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction?  *(check all that apply)*

☐ Federal question          ☑ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A.   If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

### B.   If the Basis for Jurisdiction Is Diversity of Citizenship

1.   The Plaintiff(s)

   a.   If the plaintiff is an individual

The plaintiff,  *(name)*   WILLIAM DOHERTY                    , is a citizen of the State of *(name)*   TEXAS                          .

   b.   If the plaintiff is a corporation

The plaintiff,  *(name)*                             , is incorporated under the laws of the State of *(name)*                                  , and has its principal place of business in the State of *(name)*

_____ .

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.   The Defendant(s)

   a.   If the defendant is an individual

The defendant,  *(name)*                          , is a citizen of the State of *(name)*                          . Or is a citizen of *(foreign nation)*                     .

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

    b.    If the defendant is a corporation

        The defendant, *(name)* INFUSERVER AMERICA, INC , is incorporated under

        the laws of the State of *(name)* FLORIDA , and has its

        principal place of business in the State of *(name)* FLORIDA .

        Or is incorporated under the laws of *(foreign nation)* ,

        and has its principal place of business in *(name)* .

        *(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

    3.    The Amount in Controversy

        The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:
        BECAUSE THE PLAINTIFF IS REQUESTING A JUDGEMENT IN AN AMOUNT FAR EXCEEDING 75,000 BY MORE THAN A FACTOR OF TEN NOT INCLUDING COSTS AND INTERESTS; PLAINTIFF HAS SUFFERED SEVERE CENTRAL NERVOUS SYSTEM DAMAGE AND HE IS REQUESTING 10,000,000.

## III.    Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.
PRODUCTS LIABILITY; PLAINTIFF TOOK A DRUG CONTAMINATED WITH A NEUROTOXIC CHEMICAL THAT CAUSED SEVERE CENTRAL NERVOUS SYSTEM DAMAGE. SEE GENERALLY ATTACHED COMPLAINT

## IV.    Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

PLAINTIFF SEEKS 10,000,000 IN DAMAGES. SEE ALSO COMPLAINT ATTACHED.

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

## V.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:          FEBRUARY 24, 2021

Signature of Plaintiff

Printed Name of Plaintiff        WILLIAM DOHERTY

### B.    For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address

**UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA, TAMPA DIVISION**

- - - - - - - - - - - - - - - - - - - - - - - - - -X
                                        - - - - -

WILLIAM DOHERTY,                    :     Civil No. ____:____-CV-
                                          _____

           Plaintiff,              :

              v.                    :     **COMPLAINT**

INFUSERVE AMERICA, INC.,            :

              Defendant.            :     JURY TRIAL DEMANDED
- - - - - - - - - - - - - - - - - - - - - - - - - -X
                                        - - - - -

# COMPLAINT FOR DAMAGES AND
# DEMAND FOR JURY TRIAL

Plaintiff, WILLIAM DOHERTY (hereinafter "Plaintiff"), *pro se*, brings this Complaint against defendant INFUSERVE AMERICA, INC. ("Defendant") and states in support as follows:

## PRELIMINARY STATEMENT

1. This is an action to recover damages for injuries sustained by Plaintiff as the direct and proximate result of the wrongful conduct of Defendant in connection with the design, development, manufacture, marketing, promotion, and sale of Rocephin.

2. Plaintiff seeks damages in the amount of $10,000,000.

## PARTIES

3. Plaintiff is an individual who is a citizen of the State of Texas, residing in Alpine, Texas, who had been taking Rocephin manufactured by Defendant intravenously. For the purposes of this action Plaintiff submits to the jurisdiction and venue of this Court.

4. Upon information and belief, Defendant is a corporation formed and incorporated under the laws of State of Florida and does business in St. Petersburg, in this State, in the County of Pinellas. Upon information and belief, Defendant's principal place of business is 11880 28th Street North, Suite 200, St. Petersburg, Florida.

5. On information and belief all officers, directors, and registered agents are Florida residents, with an identical address as that listed in paragraph 4, *supra*.

6. On information and belief the officers and directors of the company now and at the times relevant were: David W. Kazarian and John P. Grise.

7. At all relevant times Defendant, either personally, or through agents or employees, was the designer, manufacturer, producer, marketer, distributor, and seller of Rocephin (the "Drug")—generic name ceftriaxone—an antibiotic administered intravenously for treatment of bacterial infections and used to treat Lyme disease.

8. Defendant is one of the only licensed compounding and infusion pharmacies able to do business across the United states; Defendant ships infusion medications which it compounds—manufactures, mixes, and prepares— direct to patients' homes, after infusion .

9. Plaintiff used Defendant's Drug for three years absent incident until the events described below transpired.

## JURISDICTION

10. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), in that this is a civil action between a citizen of the State of Texas and a corporate citizen of Florida and the amount in controversy exceeds $75,000, exclusive of costs and interest.

## VENUE

11. Venue is proper in this district under 28 U.S.C. § 1391(b)(1), in that Defendant "resides" in this District, under 28 U.S.C. § 1391(c)(2) and this District is its principal place of business. Further, this District is the proper venue because a substantial part of the events or omissions took place in the District, under 28 U.S.C. § 1391(b)(2).

## FACTS

12. On or about July 2014, Plaintiff began taking the Drug to treat his Lyme disease, with a local company. Later Plaintiff began using Defendant shortly thereafter. He continued to do so for approximately three years, never changing dosage, nor frequency, nor style of administration—in this case intravenous injection of the infusion medication.

13. The Drug was normally prescribed to Plaintiff in order to treat Lyme disease, and on information and belief is prescribed for the treatment of Lyme disease regularly.

14. On information and belief the drug is considered to have excellent blood-brain barrier penetration and is widely considered one of the most effective drugs in the mitigation of Lyme disease.

15. As directed, Plaintiff would take the drug intravenously over a period of roughly an hour. Plaintiff would take the Drug for a period of "four days on and three days off."

16. Throughout this period of treatment, from on or about July 1, 2014 to on or about January 1, 2017 (the "Original Treatment Period"), Plaintiff took and administered the drug absent incident and absent any severe or adverse reaction.

4

17. During the Original Treatment Period, Plaintiff became expert in administering the Drug to himself and did so regularly in the same manner taking the medication four times per week in a regular dose.

18. Plaintiff was exceedingly pleased with Defendant's preparation of the infusion of the Drug, so pleased in fact that he recommended the Defendant to acquaintances.

19. When Plaintiff first began taking preparations of the Drug manufactured by Defendant, Defendant had Plaintiff speak with a pharmacist who never warned Plaintiff of the danger of central nervous system damage nor any of the symptoms which Plaintiff complains of herein.

20. On information and belief the symptoms Plaintiff complains of here do not result from the use of the Drug when the Drug is properly prepared, uncontaminated, and unadulterated.

21. At no point during the Original Treatment Period did Plaintiff alter in anyway his administration of the Drug, nor did Plaintiff begin taking any new medications, nor did Plaintiff change his dosage, nor did Plaintiff change the location of injection, nor did Plaintiff change the period of time over which the injection would take place, nor did Plaintiff change his method of storage.

22. On or about January 1, 2017, Defendant significantly changed representations relating to its management; on information and belief, the administrative staff and staff listed on the website significantly changed.

23. On or about March 1, 2017 Plaintiff attempted to call Defendant and learned that David W. Kazarian ("Kazarian" or "Owner")) was traveling outside of the country in the Middle East and had not been in the United States to manage Defendant for months.

24. On information and belief Defendant was aware of and capable of utilizing the best compounding practices, knew of relevant pharmacopeial standards, and during the Original Treatment Period had utilized such and met such standards.

25. On information and belief, hydrochloric acid and other powerful chemicals are used in the cleaning of mixing vats or equipment used to prepare and manufacture the drug; if not cleaned properly, such chemicals may adulterate or contaminate any medicine prepared in the vat or with the equipment.

26. On information and belief Defendant's website shows that hydrochloric acid is available and on hand at the location where pharmaceuticals are compounded.

27. On information and belief, Defendant prepared Plaintiff's Drug at the same location where acid and other chemicals which are capable of burning human tissue are stored.

28. On or about January 31, 2017 Plaintiff telephoned Defendant to discuss a price increase which had taken place without notice. The price went from approximately $400 to over $500.

29. When Plaintiff called Defendant on or about January 31, 2017, Plaintiff was first speaking to a woman who offered a lower rate if Plaintiff was willing to purchase a larger quantity of the Drug. Plaintiff explained that he lacked the facilities to safely store the larger quantity and was transferred to a man.

30. Plaintiff expected to be transferred to a member of the sales staff, or an administrative worker, but was instead put on with a man who identified himself as the "lead pharmacist." Plaintiff again explained his situation and his unhappiness with the price increase absent notice. The phone call became exceedingly heated and the "lead pharmacist" grew angry. After Plaintiff mentioned purchasing the Drug abroad, the "lead pharmacist" grew apoplectic. Thereafter, Plaintiff asked the lead pharmacist to put a hold on his order.

31. In a six days' time Plaintiff called back Defendant and asked for the order of the Drug to be prepared.

32. On or about January 1, 2017, on information and belief, while Kazarian was outside of the United States, and after the significant change of staff, Plaintiff's "batch" of medicine was prepared on or about February 16, 2017.

33. On or about February 17, 2017, Plaintiff inspected the Drug which was shipped from Defendant; the Drug was packed in the same manner, appeared the same—clear within its packaging—and nothing appeared out of place.

34. On or about February 17, 2017, Plaintiff received the batch prepared on February 16, 2017 and stored the batch in the same manner in which he normally did—and hitherto always had.

35. On information and belief if the Drug is refrigerated the Drug "keeps" for 14 days.

36. On or about February 18, 2017, Plaintiff prepared the first infusion dose using the February 16, 2017 batch (the "Batch"). After administering the first infusion Plaintiff administered the same.

37. Plaintiff continued to prepare and take infusions from the Batch, but by February 22, 2017 Plaintiff noticed severe symptoms and ceased taking all medication: Plaintiff was experiencing extreme pain throughout his entire head— it was an excruciating burning sensation.

38. Plaintiff went to a local clinic on or about February 24, 2017; on information and belief the clinic misdiagnosed Plaintiff with a migraine.

39. On or about February 27, 2017, the pain had increased to an amount that was completely intolerable and Plaintiff went to an emergency room where Plaintiff learned that a number of symptoms had manifested as a result of the Batch. Plaintiff's heart rate had increased by more than thirty-beats-per-minute. Plaintiff's entire face, skull, scalp, and eyes burned; Plaintiff also heard almost deafening ringing in both ears.

40. Plaintiff sustained severe central nervous system ("CNS") damage; optic neuritis (burning eyes); tachycardia; cranial facial pain, also known as multicranial neuropathy; and severe tinnitus; Plaintiff later developed hand tremors—all of the forgoing are symptoms of CNS damage.

41. The above symptoms have been continual since the administration of the Drug from the Batch.

## COUNT ONE
## STRICT LIABILITY-DEFECTIVE MANUFACTURE

42. Plaintiff repeats and realleges paragraphs 1 through 41 hereof, as if fully set forth herein.

43. Defendant manufactured the Drug, a product, and shipped it to Plaintiff.

44. Plaintiff took the Drug from the Batch as directed and properly; Plaintiff stored the drug properly; Plaintiff administered the Drug properly.

45. On information and belief the Drug from the Batch was contaminated at the Defendants facilities by a foreign chemical during the manufacturing process.

46. The foreign chemical was neurotoxic and upon intravenous injection caused severe CNS damage which has in turn caused all of the symptoms from which the Plaintiff continues to suffer.

47. In order to treat the same symptoms, Plaintiff has undergone significant medical treatment including taking large amounts of medications which result in adverse side effects.

48. Plaintiff is forced, due to pain and tinnitus to take a significant amount of steroids and opioids—as prescribed—to mitigate symptoms and pain.

49. Even with treatment, Plaintiff has developed anxiety as a result of the pain and constant ringing requiring additional medication—including benzodiazepines for both anxiety and insomnia.

50. Plaintiff is no longer able to sleep with any regularity.

51. Plaintiff has lost focus and the ability to use a computer for continual periods. Plaintiff is unable to focus on "bright-light" emitting screens for long periods without pain.

52. Plaintiff now suffers from osteoporosis as a result of steroid use and suffers from a loss of bone and muscle mass.

53. Plaintiff's adrenal glands have also been affected from long-term steroid use, causing Cushing's syndrome and possibly Addison's syndrome.

54. Plaintiff's life is intolerable without continuous steroid injections as a result of the pain suffered by Plaintiff as a result of the contaminated Drug from the Batch.

55. Defendant's defective manufacture of the Drug from the Batch was the direct cause of the problems adumbrated above, but for the defective preparation and manufacture of the drug none of the above symptoms would have occurred to Plaintiff, and Plaintiff would have suffered from no CNS damage.

56. Plaintiff's CNS damage was directly caused by defect present in the Drug contained in the Batch.

57. By reason of the foregoing, Defendant is liable in the amount of $10,000,000, plus interest and fees, and costs.

## COUNT TWO
## STRICT LIABILITY-FAILURE TO WARN

58. Plaintiff repeats and realleges paragraphs 1 through 57 hereof, as if fully set forth herein.

59. Defendant's market directly, and sell directly, to end-users of the drugs.

60. Defendants only conduct a perfunctory interview with a pharmacist prior to shipping the Drugs who does not warn of potential CNS damage as well as the myriad side effects which go along with CNS damage as related above.

61. The packaging contains no warning of possible contamination, or adulteration, nor does it warn that such can cause CNS damage.

62. If such a warning had been contained in the packaging, on the invoice, or transmitted by Defendant's consulting pharmacist Plaintiff would have not taken the Drugs.

63. The warning, or lack thereof, was defective and unreasonable.

64. As a direct and proximate result of Defendant's failure to warn Plaintiff has suffered the substantial injuries and suffering described above.

65. By reason of the foregoing, Defendant is liable in the amount of $10,000,000, plus interest and fees, and costs.

**WHEREFORE**, Plaintiff WILLIAM DOHERTY requests judgment as follows:

A.   A judgement awarding Plaintiff damages for physical and mental injuries, past, present, and future, loss of enjoyment of life, increased risk of health problems, past and future medical expenses, life care expenses, rehabilitation expenses, and economic damages in an amount to be determined at trial;

B.   Pre-judgement and post judgement interest at the maximum rate allowed by law;

C.   Payment of all medical monitoring services and expenses required by Plaintiff;

D.   Any attorney's fees and costs that may accrue in this action; and

E.   Any further relief which the Court may deem just, equitable, and proper.

## <u>JURY DEMAND</u>

Plaintiff hereby demands a trial by jury as to all issues so triable.

Dated: February 24, 2021

Alpine, Texas

Respectfully submitted,

By: /s/William Doherty
Plaintiff Pro Se
603 North 8th St.
Alpine, Texas 79830
432-386-0481
willhdoherty@gmail.com

14