100795-6

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WILLIAM DOHERTY,

                                    CASE NO. 8:21-CV-00454

      Plaintiff,

vs.

INFUSERVE AMERICA, INC.,

      Defendant.

_____/

## DEFENDANT, INFUSERVE AMERICA, INC.'S MOTION FOR FINAL JUDGMENT ON THE PLEADINGS AND SUPPORTING MEMORANDUM OF LAW

Defendant, INFUSERVE AMERICA, INC., by and through its undersigned counsel, and pursuant to Florida Rule of Civil Procedure 1.140(c), hereby move for final judgment on the pleadings, and in support thereof states as follows:

### INTRODUCTION

This is a claim for strict liability for manufacture defect and failure to warn regarding the compounding and infusion of medication for Lyme disease. Dismissal with prejudice based on the pleadings is warranted. The Plaintiff's claims are based in medical negligence, and should be dismissed for failure to comply with pre-suit requirements. If, however, this Court finds that Plaintiff's claims are instead based in general negligence, those claims are also time-barred for Plaintiff's failure to comply with the statute of limitations. Based solely on the pleadings available in this matter thus far, Plaintiff's claims should be dismissed.

## UNDISPUTED FACTS

In his Complaint, Plaintiff asserts that based on the facts alleged, that Defendant was the designer, manufacturer, producer, marketer, distributor and seller of Ceftriaxone (i.e. Rocephin), an antibiotic administered intravenously for treatment of bacterial infections and Lyme disease. (Doc. 1, at pg. 2 of 19 at ¶ 7).

Beginning in the fall of 2014 until February 2017, Plaintiff alleges that he utilized Defendant's company to provide his Ceftriaxone medication and since then there has been no change as to dosage, frequency or style of administration. (Doc. 1, at pg. 4 of 19 at ¶ 12). He also contends that he had no adverse reactions to taking this medication from the time that he began using the treatment until January 2017. (Doc. 1, at pg. 4 of 19 at ¶ 16).

Plaintiff alleges that Defendant never warned him of the danger of central nervous system damage or any of the symptoms of which the Plaintiff complained. (Doc. 1, at pg. 10 of 19 at ¶ 19). Further, Plaintiff complains that his signs and symptoms are a direct result of Ceftriaxone being improperly prepared, contaminated and adulterated. (Doc. 1, at pg. 10 of 19 at ¶ 20).

Moreover, Plaintiff concludes that since Defendant's website reflected that hydrochloric acid is available and on hand at the location where pharmaceuticals are compounded that Defendant used hydrochloric acid and other powerful chemicals to clean the mixing vats or equipment used to prepare or manufacture Ceftriaxone. (Doc. 1, at pg. 11 of 19 at ¶ 25-26). He further concludes that if hydrochloric acid and other powerful chemicals are not properly removed after the cleaning process, then such chemicals may adulterate or contaminate medications prepared in the vat or with the equipment. (Doc. 1, at pg. 11 of 19 at ¶ 25-26).

2

On February 17, 2017, Plaintiff acknowledged that he received the last shipment of Ceftriaxone from Defendant and that he inspected it, noted that it was the same color as prior shipments and was packaged the same as prior shipments.  (Doc. 1, at pg. 13 of 19 at ¶ 33).

On or about February 22, 2017, Plaintiff allegedly infused Ceftriaxone but that on this date he experienced severe symptoms including pain in his head and a burning sensation.  (Doc. 1, at pg. 13 of 19 at ¶ 37).

On February 24, 2017, two days later, Plaintiff went to a local clinic and was allegedly misdiagnosed with a migraine.  (Doc. 1, at pg. 13 of 19 at ¶ 38).

On February 27, 2017, three days after visiting his local clinic, Plaintiff went to the emergency room where he allegedly learned a number of symptoms had manifested themselves due to the last batch of Ceftriaxone sent by Defendant and that he had sustained severe central nervous system damage.  (Doc. 1, at pg. 13 of 19 at ¶ 39-40).

On November 4, 2014, Plaintiff's original prescription stated:  "Ceftriaxone 2gm (normal saline100 ml) to be infused 2 gm (100 ml or contents of this elastomeric pump over 60 minutes once daily)."  (Doc. 8, at pg. 1 of 17 at ¶ 5).  Plaintiff admits that this dosage is identical to the dosage of the Ceftriaxone he received on February 16, 2017, and in fact the dosage was not altered or changed at any point during the time in which he received Ceftriaxone from Defendant.  (Doc. 1, at pg. 4 of 19 at ¶ 12).  Further, Defendant is not the "designer, developer, manufacturer, or producer of any Ceftriaxone medication" and merely dilutes the medication with saline.  (Doc. 8, at pg. 3 of 17 at ¶ 13-14).

Plaintiff's Ceftriaxone prescriptions did not require that the medication be compounded.  (Doc. 8, at pg. 2 of 17 at ¶ 6).  Instead, the prescription required that Defendant dilute Plaintiff's Ceftriaxone medication with 100 ml of normal saline.  (Doc. 8, at pg. 2 of 17 at ¶ 6).  Further,

Defendant "maintained the same dilution method for Plaintiff's Ceftriaxone medication throughout the entire time Plaintiff was a patient of Defendant."  (Doc. 8, at pg. 2 of 17 at ¶ 10).

In order for Defendant to dilute the Ceftriaxone medication, Defendant would draw 19.2ml of normal saline solution with a syringe and inject the contents of the syringe into the vial of Ceftriaxone to solubilize the powder in the vial.  (Doc. 8, at pg. 2 of 17 at ¶ 9).  Defendant would inspect the solution to make sure it was a clear liquid with no particulate matter in the solution.  (Doc. 8, at pg. 2 of 17 at ¶ 6).  Defendant would then withdraw 20ml of the solution and inject it, along with 80ml of normal saline, into an elastomeric pump.  (Doc. 8, at pg. 2 of 17 at ¶ 6).  At no point did Defendant use any hydrochloric acid or any other chemicals in cleaning mixing vats or equipment that would then be used in diluting Plaintiff's Ceftriaxone medication, as Plaintiff alleges.  (Doc. 8, at pg. 2 of 17 at ¶ 11).

## LAW REGARDING JUDGMENT ON THE PLEADINGS

"A motion for judgment on the pleadings is governed by the same standard as a Rule 12(b)(6) motion to dismiss."  Pinkston v. Univ. of S. Fla. Bd. of Trustees, No. 8:18-CV-2651-T-33SPF, 2019 WL 2121095, at \*1 (M.D. Fla. May 15, 2019) (citing StoneEagle Servs., Inc. v. Pay-Plus Sols., Inc., No. 8:13-cv-2240-T-33MAP, 2015 WL 518852, at \*1 (M.D. Fla. Feb. 9, 2015) (internal citations omitted)); see also ThunderWave, Inc. v. Carnival Corp., 954 F. Supp. 1562, 1564 (S.D. Fla. 1997).  "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."  Fed. Rule of Civ. Pro. 12(c).  A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) should be granted if "no issues of material fact exist, and the movant is entitled to judgment as a matter of law."  KFR Servs., Inc. v. E. Recording, Inc., No. 11-81346-CIV, 2012 WL 13019043, at \*1 (S.D. Fla. Jan. 30, 2012) (citing Ortega v. Christian, 85 F.3d 1521, 1524-

25 (11th Cir. 1996)).  In reviewing the efficacy of a motion for judgment on the pleadings, the Court must "accept the facts in the complaint as true and view them in the light most favorable to the nonmoving party."  Ortega, 85 F.3d at 1524.

## JUDGMENT ON THE PLEADINGS IS WARRANTED BECAUSE A PLAINTIFF'S CLAIMS ARE PREDICATED ON THE STANDARD OF CARE IN MEDICAL TREATMENT AND ARE THEREFORE SUBJECT TO THE PRE-SUIT REQUIREMENTS OF A CLAIM FOR MEDICAL NEGLIGENCE

### I.     Plaintiff's claims are thinly-veiled claims for medical negligence.

It is well established that a claim for medical negligence "[arises] out of [a defendant's] alleged medical misdiagnosis and treatment."  Pettinga v. Metabolic Rsch. Inst., Inc., No. 13-CV-80077, 2014 WL 12452443, at *1 (S.D. Fla. May 6, 2014); see also Horst v. Parker, No. 607CV612-ORL-19KRS, 2007 WL 4557243, at *1 (M.D. Fla. Dec. 21, 2007).

In determining if a claim is a thinly-veiled claim for medical negligence, "the key inquiry is whether the alleged injury occurred during the rendition of medical care or services. Generally, this determination hinges upon whether the treatment modality involved the application of medical skill or knowledge." Pettinga, No. 13-CV-80077, 2014 WL 12452443, at *3 (citing Lakeland Reg'l Med. Ctr., Inv. v. Allen, 944 So. 2d 541, 544 (Fla. Dist. Ct. App. 2006).  "Unlike simple claims for negligence which may proceed in a medical context where they have no relation to medical care," a claim is for medical negligence when a plaintiff's claims "turn on [a defendant's] professional medical judgment." Id.

A claim qualifies as a medical negligence claim when the alleged wrongful act is "directly related to the improper application of medical services and the use of professional judgment or skill." Pettinga, No. 13-CV-80077, 2014 WL 12452443, at *3 (internal citations omitted); see also Alonso v. Alonso, No. 18-23668-CIV, 2019 WL 5268554, at *4 (S.D. Fla.

Oct. 17, 2019). "Furthermore, the injury must be a direct result of receiving medical care or treatment by the healthcare provider. To state otherwise, where the underlying conduct complained of is 'medical in nature,' the claim asserted is one of medical negligence and subject to the pre-suit screen requirements of chapter 766." Pettinga, No. 13-CV-80077, 2014 WL 12452443, at *3 (internal citations omitted); *see also* Cagle v. United States, No. 3:15-CV-0350-J-20JBT, 2017 WL 6368249, at *2 (M.D. Fla. Aug. 3, 2017), aff'd, 738 F. App'x 633 (11th Cir. 2018).

Here, Plaintiff's claims are a thinly-veiled attempt to argue medical negligence without complying with the pre-suit requirements. Plaintiff states in his Complaint that the basis for his claims is the alleged negligence of Defendant in the "design, development, manufacture, marketing, promotion, and sale of Rocephin" that was part of his medical treatment for Lyme disease. (Doc. 1, at pg. 1 of 19 at ¶ 1). Plaintiff's claims are solely based upon the standard of care displayed (or not displayed as Plaintiff argues) by Defendant in the treatment and care of Plaintiff's Lyme disease. Plaintiff's claims essentially admit that his treatment (and therefore his claims) rely upon the application of medical knowledge by Defendant. Plaintiff's claims indicate that Defendant is "one of the only licensed compounding and infusion pharmacies able to do business across the United States." (Doc. 1, at pg. 3 of 19 at ¶ 8). If the allegations in the Plaintiff's Complaint are taken as true, they allege that Defendant was medically negligent in the compounding of the medication that is provided to Plaintiff as part of his medical treatment and care for his Lyme disease. As such, Plaintiff's own allegations acknowledge that the claims are related to medical care for his Lyme disease and require certain knowledge and expertise on the part of Defendant. Therefore, pursuant to Florida law and Plaintiff's own filings, Plaintiff's claims are for medical negligence.

**II. As Plaintiff's claims are for medical negligence, his failure to comply with pre-suit requirements of § 766.203, *Florida Statutes*, warrants dismissal.**

Florida law requires that, to bring a claim for medical negligence, the plaintiff must "conduct a pre-suit investigation prior to filing his complaint." Pettinga, No. 13-CV-80077, 2014 WL 12452443, at *1. "The pre-suit investigation requirements are not jurisdictional but rather are conditions precedent to the bringing of a medical malpractice action." Clark v. Sarasota County Pub. Hosp. Bd., 65 F.Supp.2d 1308, 1310 (M.D.Fla.1998) (citing Kukral v. Mekras, 679 So.2d 278, 283 (Fla.1996)). "The law is clear that if a claimant fails to fulfill the pre-suit investigation requirements prior to filing [an] action, Florida law requires dismissal of the claim." Johnson v. Crosby, No. 506CV92-RS-MD, 2006 WL 3755286, at *2 (N.D. Fla. Dec. 15, 2006); *see also* Fla. Stat. § 766.203(2); Danhi v. Charlotte County Sheriff's Dep't, 2006 U.S. Dist. LEXIS 53676, (M.D.Fla.2006) (citing Clark, 65 F.Supp.2d at 1310).

In the subject action, Plaintiff wholly and unquestionably failed to comply with the pre-suit requirements necessary to bring a medical negligence claim under §766.203, *Florida Statutes*. It is undisputed that Plaintiff has not at any point put forward the opinion or testimony of an expert in pharmaceutical practices that Defendant failed to comply with the prevailing standard of care in providing the medication for Plaintiff's Lyme disease. Further, it is undisputed that Plaintiff failed to comply with the pre-suit investigation required to bring a claim for medical negligence. Plaintiff did not allege in his Complaint that he complied with all pre-suit requirements because he cannot make such a statement. As such, on the face of the Complaint, it is clear that Plaintiff failed to comply with or plead compliance with the pre-suit requirements of §766.203, *Florida Statutes*. Therefore, judgment on the pleadings warrants dismissal.

**III.     Plaintiff failed to bring his claim within the two-year statute of limitations and therefore his claim is barred.**

"In addition to Plaintiff's failure to comply with Florida's pre-suit requirements for medical malpractice claims, Plaintiff's claims should be dismissed because the statute of limitations for filing a medical malpractice claim against [Defendant] has expired." Neal v. Parker, No. 5:15-CV-71-MW-GRJ, 2017 WL 443163, at *6 (N.D. Fla. Jan. 11, 2017), report and recommendation adopted, No. 5:15CV71-MW/GRJ, 2017 WL 440727 (N.D. Fla. Feb. 1, 2017).  Florida law requires that "[a]n action for medical malpractice shall be commenced within 2 years from the time the incident giving rise to the action occurred or within 2 years from the time the incident is discovered, or should have been discovered with the exercise of due diligence."  Fla. Stat. § 95.11(4)(b).

In his Complaint, Plaintiff states that, on "February 22, 2017, [he] noticed severe symptoms and ceased taking all medication."  (Doc. 1, at pg. 13 of 19 at ¶ 37).  As such, by his own admission, the date of "the incident giving rise to the action" or the date that "the incident is discovered" is February 22, 2017.  Pursuant to § 95.11(4)(b), *Florida Statutes*, Plaintiff had two (2) years from February 22, 2017, to file his claim for medical negligence, which would have expired on February 22, 2019.  Plaintiff filed his complaint for damages relating to injuries he allegedly sustained from the medication he received from Defendant on February 24, 2021, over four (4) years after the date that the "incident [was] discovered."  As such, Plaintiff failed to comply with the statute of limitations for bringing his medical negligence claim and the subject action should therefore be dismissed.  *See generally* Neal.

**ASSUMING, *ARGUENDO*, THAT THIS COURT BELIEVES PLAINTIFF'S CLAIMS ARE IN FACT BASED IN NEGLIGENCE, PLAINTIFF FAILED TO COMPLY WITH THE STATUTE OF LIMITATIONS AND THEREFORE THESE CLAIMS SHOULD BE DISMISSED**

8

"[A] plaintiff is not barred from asserting an ordinary negligence claim as long as he or she does not rely on the medical negligence standard of care."  Horst, No. 607CV612-ORL-19KRS, 2007 WL 4557243, at \*2 (citing Feifer v. Galen of Fla., Inc., 685 So.2d 882, 885 (Fla. 2d DCA 1996).  However, even if this Court finds that Plaintiff claims are based in negligence rather than medical negligence, Plaintiff failed to file his Complaint within the required four (4) years for torts claims in Florida and is therefore barred from bringing a claim for negligence.

Under Florida law, "[a]n action founded on negligence" must be brought within four (4) years of the incident giving rise to such claim.  Fla. Stat. § 95.11(3)(a).  As such, "suits brought in tort would be governed by the four-year statute of limitations pertaining to general negligence actions" and those that are not brought within that four (4) year time period are time barred.  First Mut. Grp., L.P. v. Miqeulon, No. 2:14-CV-14445, 2015 WL 12778387, at \*3 (S.D. Fla. Aug. 24, 2015).  Here, Plaintiff noticed the alleged "change" in his Ceftriaxone on February 22, 2017.  (Doc. 1, at pg. 13 of 19 at ¶ 37).  Under Florida law, Plaintiff would have had until February 22, 2021, to bring a general negligence claim.  As his claim was not brought until February 24, 2021, any claim Plaintiff could bring for general negligence is time-barred.  *See generally* First Mut. Grp.  Further, any attempt to bring a general negligence claim over four (4) years after the alleged incident, in violation of the statute of limitations for such claims, prejudices Defendant in that they are not able to fully investigate the claim due to the spoliation of evidence, the degradation of memory, and other factors preventing a full and complete investigation into Plaintiff's claim for general negligence.  As such, should this Court find that Plaintiff's claims are based in general negligence rather than medical negligence, the claims are also time-barred and prejudicial to Defendant at this point, as is evidenced by Plaintiff's own Complaint, and should be dismissed on the pleadings.

## CONCLUSION

According to the allegations contained in the Complaint, Plaintiff claims are based in, and stem from, the medical care he was receiving as a patient of Defendant for the ongoing treatment of his Lyme disease. As Plaintiff's claims stem from his medical care, the claims are subject to the pre-suit requirements of pursuing a medical negligence claim under Florida law, such as a pre-suit investigation period and the requirement to provide expert testimony regarding the standard of care. It is undisputed that Plaintiff did not comply with these requirements. As such, based on merely the allegations in the Complaint, Plaintiff's claims for medical negligence cannot proceed.

Even if Plaintiff were to be attempt to complete a pre-suit investigation at this point in the litigation, the claim is subject to the two-year statute of limitations for medical negligence claims, which would prevent him from doing so now. As such, the pleadings as they have been filed in this matter show that the Plaintiff's claims are based on allegations of medical negligence, not negligence, and therefore Plaintiff must be found to have failed to comply with the pre-suit requirements of a medical negligence claim.

Further, if this Court were to find that Plaintiff's claims were in fact negligence claims, he failed to comply with the statute of limitations for bringing such claims. As such, based on the pleadings, any claim for negligence cannot survive.

Using only the facts set out in the Complaint, as well as the other filings in this matter, it is clear, as a matter of law, that Plaintiff's claims, whether for medical negligence or negligence, are baseless and are barred by law. Therefore, "no issues of material fact exist, and the movant is entitled to judgment as a matter of law" pursuant to KFR Services and this motion

10

for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) should be granted.

WHEREFORE, Defendant, INFUSERVE AMERICA, INC., requests that this Honorable Court grant this Motion for Judgment on the Pleadings, dismiss this case with prejudice, enter final judgment against the Plaintiff, and grant whatever other relief as it deems just and proper.

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed this 23rd day of September, 2021 in the US District Court, Middle District of Florida, using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/ Erin M. Diaz
Erin M. Diaz, Esquire
Florida Bar No. 673005
Necia N. Logan, Esquire
Florida Bar No. 121605
WICKER SMITH O'HARA MCCOY & FORD, P.A.
Attorneys for Infuserve America, Inc.
100 N. Tampa St., Suite 1800
Tampa, FL 33602
Phone: (813) 222-3939
Fax: (813) 222-3938
TPAcrtpleadings@wickersmith.com

## SERVICE LIST

Ayelet Faerman, Esq.
Faerman Law, P.A.
Attorney for William Doherty
4713 N. University Dr. # 578
Coral Springs, FL 33067
Tel:  (954) 271-8484
Fax:  (954) 271-8474
Ayelet@faerman.law
pleadings@faerman.law