UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA

WILLIAM DOHERTY,                    CIRCUIT CIVIL DIVISION

    Plaintiff,                      CASE NO. 8:21-CV-00454

vs.

INFUSERVE AMERICA, INC.,

    Defendant.

_____/

## DEFENDANT'S, INFUSERVE AMERICA, INC., MOTION FOR SUMMARY JUDGMENT AND REQUEST FOR ORAL ARGUMENT

Defendant, INFUSERVE AMERICA, INC. (hereinafter "Infuserve"), by and through the undersigned counsel and pursuant to Federal Rule of Civil Procedure 56, hereby moves this Honorable Court for an entry of summary judgment in its favor on all remaining counts and seeks oral argument regarding same.

## INTRODUCTION AND PERTINENT FACTS

On or about February 24, 2021, *pro se* Plaintiff, WILLIAM DOHERTY (hereinafter "Plaintiff"), filed his Complaint alleging strict liability claims of manufacture defect and failure to warn. (Doc. 1). On or about March 16, 2022, Plaintiff filed his Amended Complaint alleging additional counts of breach of express warranty, breach of implied warranty, negligence, negligent misrepresentation, and violation of consumer protection laws. (Doc. 49). On

August 2, 2022, this Court dismissed Counts II (breach of express warranty) and V (negligent misrepresentation) of the Plaintiff's Amended Complaint, leaving Counts I (strict liability), III (breach of implied warranty), IV (negligence), and VI (violation of consumer protection statutes) remaining. (Doc. 78).

For all times relevant, the Defendant was an infusion and compounding pharmacy that provided Rocephin medication to the Plaintiff for the treatment of his Lyme Disease. (Doc 49). Plaintiff alleges that in February of 2017, he received a delivery of Rocephin. *Id*. at ¶ 28. Plaintiff prepared and administered the first infusion of Rocephin on February 18, 2017. *Id*. at ¶ 30. By February 22, 2017 Plaintiff noticed "severe symptoms" and ceased taking all medication. *Id*. at ¶ 31. Without documentary support or any expert testimony regarding causation, Plaintiff claims that these symptoms are associated with central nervous system ("CNS") damage that he attributes to the Rocephin medication that was provided by Defendant. *Id*. at 33. After the passage of the Statute of limitations, despite a lack of evidence, and in the face of evidence to the contrary, Plaintiff brought his Amended Complaint alleging that his Rocephin was contaminated with hydrochloric acid. *Id*. at ¶ 33.

CASE NO. 8:21-CV-00454

## SUMMARY JUDGMENT STANDARD

Summary judgment shall be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a), (c). "[T]he court must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)). "An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Burgos v. Chertoff*, 274 F. App'x 839, 841 (11th Cir. 2008) (quoting *Allen v. Tyson Foods Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (internal quotation marks omitted)). "A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Channa Imps., Inc. v. Hybur, Ltd.*, No. 07-21516-CIV, 2008 WL 2914977, at *2 (S.D. Fla. Jul. 25, 2008).

Although the moving party bears the initial responsibility of stating the basis for its motions and identifying those portions of the record that demonstrate the absence of genuine issues of material fact, that burden can be discharged by "showing ... that there is an absence of evidence to support the nonmoving party's

3

CASE NO. 8:21-CV-00454

case." *Celotex v. Catrett*, 477 U.S. 317, 324–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "A court need not permit a case to go to a jury . . . when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996). Further, "the mere possibility that factual disputes may exist, without more, is not sufficient to overcome a convincing presentation by the party seeking summary judgment." *See Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980).

## ARGUMENT AND MEMORANDUM OF LAW

### I. The Plaintiff's Causes of Action are Time-Barred by the Statute of Limitations.

#### a. Plaintiff's Negligence Claim (Count IV) is Barred by the Statute of Limitations Under the Professional Liability Statute.

Under Florida law, actions for professional malpractice have a statute of limitations of two years. Fla. Stat. § 95.11(4)(a). Negligence actions against pharmacies for prescription errors are subject to this statute. *See Morua v. Walgreen Co.*, No. 613CV1524ORL37GJK, 2014 WL 12625775, at *2 (M.D. Fla. Feb. 3, 2014) (citing *Sheils v. Jack Eckerd Corp.*, 560 So. 2d 361, 362–63 (Fla. 2d DCA 1990). This "period of limitations shall run from the time the cause of action is discovered or

CASE NO. 8:21-CV-00454

should have been discovered with the exercise of due diligence." Fla. Stat. §

95.11(4)(a).

Quoting the Florida Supreme Court in *Tanner v. Hartog*, 618 So.2d 177, 181–

82 (Fla.1993), the Eleventh Circuit has weighed in on this topic, construing the

"nearly identical"[1] medical malpractice statute, stating:

> . . . [K]nowledge of the injury as referred to in the rule as triggering the statute of limitations means not only knowledge of the injury but also knowledge that there is a reasonable **possibility** that the injury was caused by medical malpractice. The nature of the injury, standing alone, may be such that it communicates the possibility of medical negligence, in which event the statute of limitations will immediately begin to run upon discovery of the injury itself. . . .

*Arrington v. Walgreen Co.*, 416 F. App'x 846, 848 (11th Cir. 2011) (emphasis added)

(affirming a defendant pharmacy's award of summary judgement as the plaintiff

had "reason to believe professional negligence had occurred" after her mother had

an allergic reaction to her medication, but did not bring the lawsuit until more

than two years later). Importantly, the Florida Supreme Court specifically declined

the suggestion that the statute should not begin to run until there is notice of a

---

[1] The Eleventh District Court of Appeals agrees that Florida's interpretation of section 95.11(4)(b) informs interpretation of section 95.11(4)(a). *Arrington v. Walgreen Co.*, 416 F. App'x 846, 848 (11th Cir. 2011).

CASE NO. 8:21-CV-00454

"*probability*" rather than a "*possibility*" of injury from medical negligence. *Tanner v. Hartog*, 618 So. 2d 177, n.4 (Fla. 1993).

While the allegations of negligence have been couched in Plaintiff's Amended Complaint as those of general negligence, the substance of these allegations listed in both Plaintiff's original and Amended Complaints plainly arise from professional conduct relating to an alleged compounding error at Infuserve. Plaintiff's negligence claim is therefore a professional negligence claim as contemplated under Fla. Stat. § 95.11(4)(a).

Further, under Plaintiff's own allegations in his Amended Complaint, it is undisputable that Plaintiff had knowledge of a "reasonable possibility" that professional negligence had occurred back in February of 2017. (Doc. 49 at ¶¶ 31-33).  Notwithstanding, he did not file his original Complaint until four years later on February 24, 2021, and did not bring his negligence claims in the Amended Complaint until March 16, 2022. (Doc. 1, 49). Plaintiff's description of his claim as "normal" negligence is a transparent attempt to avoid the expired two-year Statute of Limitations that governs professional negligence claims. Accordingly, this Court should award summary judgement in Defendant's favor on Plaintiff's negligence count.

CASE NO. 8:21-CV-00454

## II.  <u>The Plaintiff's Remaining Counts are Also Time-Barred (Counts I, III, IV, and VI).</u>

Even if it is found by this Honorable Court that the Statute of Limitations that governs professional negligence does not apply in this case, then the four-year Statute of Limitations sections that govern the remaining counts of "normal" negligence, strict liability, breach of implied warranty, and the Florida Deceptive and Unfair Trade Practices have also lapsed, and summary judgment should be awarded as to each remaining count. Each of the remaining causes of action must be commenced within four (4) years "from the time the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence."[2] *Senger Bros. Nursery v. E.I. Dupont de Nemours & Co.*, 184 F.R.D. 674, 684 (M.D. Fla. 1999) (granting summary judgment for defendant chemical manufacturer on plaintiff's claims of strict liability, negligence, and breach of implied warranty because the statute of limitations had run).

Commencement of the running of the statutes of limitation does not need to be a "legal certainty. " *Id.* Rather, a plaintiff must only have notice of the **possible invasion** of his or her legal rights. *Id.* "The rationale for this is simple: '[i]f potential lay claimants were required to possess a professional level of knowledge before a

---

[2] "Normal negligence's" time limitation is governed by Fla. Stat. § 95.11(3)(a), strict liability by Fla. Stat. § 95.11(3)(e), breach of implied warranty by Fla. Stat. § 95.11(3)(k), and the Florida Deceptive and Unfair Trade Practices Act by Fla. Stat. § 95.11(3)(f).

7

cause of action were discoverable, then theoretically the claimant's action would almost never accrue.'" *A.P. ex rel. Ferez v. GlaxoSmithKline, LLC*, No. 13-23246-CIV, 2014 WL 3928522, at *3 (S.D. Fla. Aug. 12, 2014) (*quoting Byington v. A.H. Robins Co., Inc.*, 580 F.Supp. 1513, 1517 (S.D.Fla.1984).

In fact in 2015, the Middle District of Florida in Jacksonville held that a plaintiff with an allegedly defective mesh patch used after a hernia surgery had notice of a possible invasion of her rights when she attended an initial appointment with her doctor and reported an "infected patch" prior to a formal diagnosis. *Whitty v. Covidien LP*, No. 3:13-CV-1176-J-39PDB, 2015 WL 13790808, at *2 (M.D. Fla. May 5, 2015), report and recommendation adopted, No. 3:13-CV-1176-J-39PDB, 2015 WL 13790806 (M.D. Fla. May 29, 2015). The plaintiff argued that she did not have notice at that initial appointment, as her provider did not confirm the mesh was infected until a later date. *Id*. The Court disagreed and held that the plaintiff knew of her injury at that first appointment and had made the possible connection that it may be related to the mesh. *Id*. at *3.

Similarly here, based on information obtained during Plaintiff's deposition, Plaintiff discovered or should have discovered the cause of action starting on February 23, 2017. Plaintiff testified during his deposition that he started noticing symptoms which gave rise to his cause of action on February 22, 2017:

CASE NO. 8:21-CV-00454

> Q. So let's say that – you said the first time you noticed – starting noticing these symptoms was on February 22, did you contact any of your healthcare providers?
>
> A. Yes, I – I did. And I got into my clinic on the 24th to let them know what happened, and, you know, what we could do, and I just got the nurse practitioner.

*See* **EXHIBIT A (Doherty Dep. 105: 20 - 106: 1)**

Plaintiff further testified that the first time he spoke to his healthcare provider was February 23, 2017:

> Q. And when you did contact your healthcare provider to go see them on the 24th? When was the first time you talked to them?
> A. It probably would have been the 23rd.

*Id.* **at 106: 2 – 5.**

Most importantly, the Plaintiff testified that when he contacted his healthcare provider he mentioned his suspicion that his antibiotic was the cause of his symptoms:

> Q. And did you raise any suspicion with him concerning the cause of those symptoms?
> A. Yeah. You know, the – the anti – the IV antibiotic. And I took a sample to him in a lunch box to ask if he could test it.

*Id.* **at 106: 17 – 21.**

The statute of limitations "clock" started running on February 23, 2017 when Plaintiff initially made contact with his healthcare provider. Indeed, the fact that he brought the medication along with him in a lunch box, demonstrates the

9

CASE NO. 8:21-CV-00454

Plaintiff's knowledge of the possibility of the causal connection between his "severe symptoms" and the Rocephin. Plaintiff's initial complaint was filed with the Court on February 24, 2021. Accordingly, summary judgment should be granted in favor of the Defendant as the four-year statute of limitations has also expired on the remainder of Plaintiff's counts.

### III. The Plaintiff Cannot Sustain his Evidentiary Burden as to any of the Remaining Counts (Counts I, III, IV, and VI).

As discussed in the subheadings below, in order to satisfy the causation element of each of the remaining counts, the Plaintiff must show that, but for contamination of his Rocephin, he would not have suffered his alleged injuries. He must also show that he did, in fact, sustain damages. However, the Plaintiff's third-party testing results that he procured on his own behalf, make clear that if the Plaintiff did indeed suffer some form of severe symptoms, they were not caused by contamination of his Rocephin.

On or about May 18, 2021, Plaintiff provided a sample of his alleged defective Rocephin batch to ARL Bio Pharma Lab (ARL Bio Pharma, Inc.) for third-party testing on his own accord. **Ex. A at 116:17-19**. On May 25, 2021, the sample was tested using the gas chromatography mass spectrometry method and a qualitative analysis was performed for identification of an unknown substance. *See* ARL Bio Pharma, Inc., Records (redacted for confidentiality and privacy)

attached hereto as **Exhibit B**.[3]  Despite Plaintiff's unsupported contentions that this was not the correct type of test, the testing done by ARL Bio Pharm, Inc., was an appropriate method to identify contaminants such as hydrochloric acid. *See* the Affidavit of Defendant's toxicology expert, Dr. Bruce Goldberger Ph.D. F-ABFT, attached hereto as **Exhibit C**. An appropriate concentration of 11.8718 mg/mL of Cetriaxone (Rocephin) was identified. *Id*. No illicit substances, pharmaceutical drugs, or poisons were identified. *Id*.

Plaintiff's entire theory of this lawsuit is based off conclusory allegations and assumptions. To date, the Plaintiff has failed to submit or discover any substantive evidence that shows his batch of Rocephin was contaminated. He has also failed to disclose any expert who will testify as to any contamination. No contaminants were identified in the sample of the same batch of Rocephin the Plaintiff used to infuse himself, and therefore, he cannot sustain his burden to prove causation or damages on any of the remaining counts that have not been dismissed. Despite knowledge of these results, the Plaintiff continued on with this frivolous lawsuit.

---

[3] These records are admissible under Fed.R.Civ.P. 803(b)(6) and 902(11).

**a. Count I- Plaintiff's Strict Liability Count Fails due to Lack of a Defect, Causation, and Damages.**

In Count I, the Plaintiff seems to plead a combination of design defect and failure to warn theories. Under both theories of strict liability, there exists both a causation and damages element. To prove a claim for strict liability for defective design, a plaintiff must show that: 1) the defendant manufactured or distributed the product in question; 2) that the product had a defect that rendered it unreasonably dangerous and; 3) that the unreasonably dangerous condition was the proximate cause of the; 4) plaintiff's injury. *Marzullo v. Crosman Corp.*, 289 F. Supp. 2d 1337, 1346 (M.D. Fla. 2003). For failure to warn, the Plaintiff must show: "1) that the warnings accompanying the item were inadequate; 2) that the inadequacy of the warnings proximately caused Plaintiff's injury; and 3) that Plaintiff in fact suffered an injury by using the product." *Colville v. Pharmacia & Upjohn Co. LLC*, 565 F. Supp. 2d 1314, 1320 (N.D. Fla. 2008).

Defendant's alleged act must be "'more likely than not' a substantial factor in bringing about the injury." *Id*. at 1322. "A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant." *Id*.

At this point, even after the opportunity to conduct discovery and retain experts, the Plaintiff's claims that hydrochloric acid contaminated remain complete speculation and are in fact counter-indicated by the existing evidence. Not only can the Plaintiff not prove causation and damages under both theories of strict liability, he also cannot prove a defect under the defective design theory, rendering the Rocephin inherently dangerous. As in *Colville*, because causation is pure speculation, it is the duty of this Court to award summary judgment on this Count.

### b. Count III- Plaintiff's Negligence Count fails due to Lack of Breach, Causation, and Damages.

It is presumed that this Court is aware that Florida courts have a tendency scrutinize motions for summary judgement on the issue of negligence. However, the entry of summary judgment in a professional negligence or malpractice action is proper where there are no disputed issues of material fact. *See Chipman v. Chonin*, 597 So. 2d 363, 364 (Fla. 3d DCA 1992)(granting defendant's motion for summary judgment on a legal malpractice claim where record was devoid of evidence which would support counsel's withdraw caused plaintiff to lose monetary damages); *Martinez v. Letica Corp.*, 617 So. 2d 453 (Fla. 3d DCA 1993)(holding that although the court was required to exercise special caution in determining negligence case on motion for summary judgment, summary judgment was properly granted,

CASE NO. 8:21-CV-00454

where defendants unequivocally demonstrated absence of negligence on their part).

Notably, in *Wroy v. N. Miami Med. Ctr., Ltd.*, 937 So. 2d 1116, 1117 (Fla. 3d DCA 2006), Florida's Third District Court of Appeals granted defendant's motion for summary judgment where plaintiff did not present sufficient evidence that a quicker breast cancer diagnosis would cause a decrease in her survival chances or increase in her reoccurrence probability. The Court held that the plaintiff's citation of her presuit expert affidavits claiming that the defendant's conduct caused a delay in her diagnosis and a decreased chance of surviving was not enough to withstand summary judgment. *Id*. at 1118.

In Paragraph 62 of the Plaintiff's Amended Complaint, the Plaintiff lists a slew of conclusory allegations regarding the alleged breaches committed by Infuserve. *See* Doc. 49 at ¶ 62.  Regardless of the broad scope of Plaintiff's negligence allegations, the legal issue as to this count is simple: Plaintiff cannot sustain any of his allegations of negligence if there was no hydrochloric acid contained in his Rocephin, as his injuries would not be linked to any alleged breach.

Like the Third District Court of Appeals of Florida cited above, the Plaintiff has not established a record that would indicate any evidence of negligence other

CASE NO. 8:21-CV-00454

than his own self-serving statements and conjectures. Further, the Plaintiff has had ample time to conduct discovery and obtain experts in this matter. However, to date, Plaintiff has not conducted any discovery nor disclosed any expert who will opine as to whether the Rocephin was contaminated with hydrochloric acid. The Court ordered Plaintiff's Rebuttal Expert Disclosure to occur on September 26, 2022. (Doc. 82.) The Plaintiff failed to list any rebuttal experts. The only evidence discovered in this matter is clear—there was no hydrochloric acid in the Rocephin batch Plaintiff administered to himself. *See* **Ex. B and C**. Accordingly, summary judgment must be awarded on this Count.

   c. **Count IV- Plaintiff's Breach of Implied Warranty Count fails due to Lack of Causation and Damages.**

   Though not stated, Plaintiff's breach of implied warranty appears to be under the implied warranty of merchantability theory. The elements of breach of implied warranty of merchantability include that: "(1) the plaintiff was a foreseeable user of the product, (2) the product was used in the intended manner at the time of the injury, (3) the product was defective when transferred from the warrantor, and (4) the defect caused the injury." *See generally Hernandez v. Aurobindo Pharma USA, Inc.*, 582 F. Supp. 3d 1192, 1208 (M.D. Fla. 2022). Again, the Plaintiff has not presented evidence that there was, in fact, a defect in the Rocephin. Nor will he be able to prove any damages related to same.

15

CASE NO. 8:21-CV-00454

Even under the theory of beach of implied warranty of fitness for a particular purpose, the Plaintiff's claim fails as there is no indication that his Rocephin was not fit for its particular purpose of treating Lyme Disease. *See* Fla. Stat. § 672.315 (stating that "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose"). As the record is devoid of any evidence of a defect or contamination, the Defendant respectfully requests summary judgment be granted as to breach of implied warranty.

### d. Count IV- Plaintiff's "Violation of Consumer Statutes" Count fails due to Lack of a Deceptive Act, and Lack of Causation and Damages.

Lastly, as to Count VI, Plaintiff's violation of "consumer statutes" count, to prevail under the Florida Deceptive and Unfair Trade Practices Act (hereinafter "FDUTPA"), a plaintiff must prove: 1) the existence of a deceptive act or unfair practice, 2) causation, and 3) actual damages. *Reilly v. Chipotle Mexican Grill, Inc.*, 711 F. App'x 525, 529 (11th Cir. 2017) (affirming summary judgment after the plaintiff could not prove actual damages resulting from the defendant restaurant allegedly falsely advertising that it had removed all genetically modified ingredients from its menu). A "deceptive act" is one that "offends established

CASE NO. 8:21-CV-00454

public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Hennegan Co. v. Arriola*, 855 F. Supp. 2d 1354, 1361 (S.D. Fla. 2012) (*citing Washington v. LaSalle Bank Nat'l Ass'n.*, 817 F.Supp.2d 1345, 1350 (S.D.Fla.2011)). Causation may not be remote or speculative; it must be direct. *Id*. Further, the actual damages must "directly flow" from the deceptive act or unfair practice. *Id*.

The Plaintiff vaguely claims in his Amended Complaint that Infuserve violated "consumer statutes" (FDUPTA) in three ways:

> (a) Representing that goods or services have characteristics or ingredients, uses, benefits, or quantities that they do not have; (b) Advertising goods or services with the intent not to sell them as advertised; and (c) Engaging in fraudulent or deceptive conduct that creates a likelihood of confusion or misunderstanding.

Doc. 49 at ¶ 79.

To date, it still remains unclear what Infuserve did to allegedly violate the subsections referenced above. The Plaintiff has submitted no evidence of advertisements or representations made by Infuserve. Nor has he conducted discovery revealing same. Further, he has made no showing how these alleged representations or advertisements caused him **actual** injury, much less how that injury "directly flowed" from the deceptive act or unfair practice. Accordingly, the

CASE NO. 8:21-CV-00454

Court should grant the Defendant's Motion for Summary Judgment as to the consumer protection statute violations.

**IV.    There is not Good Cause to Extend Discovery Pending this Motion.**

It is anticipated that Plaintiff will seek an extension to conduct discovery as to each Count's causation element. Under Federal Rule of Procedure 16(b)(3)(A), a district court must issue a scheduling order that sets the time to complete discovery. This order may only be modified for "good cause" and with the judge's consent. Fed.R.Civ.P. 16(b)(4). In order to plead "good cause," the party seeking an extension must establish they could not meet the current deadlines despite their due diligence. *Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218, 1232 (11th Cir. 2008).

Although a district court may extend the discovery deadline, it is under no obligation to do so, and holding parties to the clear terms of a scheduling order generally does not amount to an abuse of discretion." *Rowell v. Metro. Life Ins. Co.*, 579 F. App'x 805, 807 (11th Cir. 2014) (holding the district court not abuse its discretion in denying a pro se employee's third request for an extension of time to complete discovery, despite contention that the withdrawal of the employee's counsel left him with insufficient time to obtain information necessary to his case, where the employee waited two weeks after counsel's withdrawal to request an

CASE NO. 8:21-CV-00454

extension, and the employee failed to demonstrate that additional discovery would allow him to make a prima facie case of racial discrimination). Finally, assertions that additional discovery "could lead to supplemental briefing" and "could be used in opposition to summary judgement" are insufficient to stay the case in the face of a motion for summary judgment. *Reilly*, 711 F. App'x at 529. For these reasons, Infuserve requests this Court not permit any additional extensions to discovery and grant this Motion for Summary Judgment in full.

## CONCLUSION

WHEREFORE, Defendant, INFUSERVE AMERICA, INC., respectfully requests this Court (1) grant Defendant oral argument on this Motion (2) grant summary judgement in its favor (3) award any other relief this Court deems appropriate.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the Clerk of Court using the CM/ECF system on this 20th day of December, 2022, and the foregoing document is being served this day on all counsel or parties of record on the Service List below, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing.

CASE NO. 8:21-CV-00454

Respectfully submitted,

/s/ Madeleine Vaughn
Nichole M. Koford, Esquire (55429)
Madeleine C. Vaughn, Esquire (1010615)
WICKER SMITH O'HARA
  McCOY & FORD, P.A.
100 S. Ashley Dr., Suite 1800
Tampa, FL  33602
Telephone:   (813) 222-3939
Facsimile:    (813) 222-3938
Attorneys for Infuserve America, Inc.

**SERVICE LIST**

William Doherty
Via Email: willhdoherty@gmail.com
603 North 8th St.
Alpine, TX 79830
(432) 386-0481