UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WILLIAM DOHERTY,

    Plaintiff,

v.                                                Case No: 8:21-cv-0454-KKM-AEP

INFUSERVE AMERICA, INC.,

    Defendant.
_____

## ORDER

William Doherty sued Infuserve America, Inc., alleging that he purchased a defective supply of Rocephin (an antibiotic) from Infuserve and that the Rocephin caused severe and permanent damage to his central nervous system. *See* Am. Compl. (Doc. 49). Doherty alleged six counts: Strict Liability—for defective design, manufacturing, and warning; Breach of Express Warranty; Breach of Implied Warranty; Negligence; Negligent Misrepresentation; and "Violation of Consumer Protection Laws." *See generally id.* In an earlier order, this Court dismissed Doherty's claims for Breach of Express Warranty and Negligent Misrepresentation, and construed Doherty's final count as alleging a violation of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Fla. Stat. §§ 501.201–501.213. *See* Order on Mot. to Dismiss (Doc. 78).

After Infuserve answered and the Parties completed discovery, Infuserve moved for summary judgment on the remaining Counts—Strict Liability (Count I), Breach of Implied Warranty (Count III), Negligence (Count IV), and FDUTPA (Count VI). Mot. for Summ. J. (Doc. 86). Because Doherty is pro se, this Court advised Doherty "of the deadline to respond to the motion, the standards governing summary judgment, and the consequences of summary judgment." Summ. J. Notice (Doc. 87) at 1 (citing *Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985)). Specifically, Doherty was warned that if he failed to timely respond to Infuserve's motion, the motion would become subject to treatment as unopposed. *Id.* (citing *Griffith*, 772 F.2d at 825); *see also* Local Rule 3.01(c).

Because Doherty failed to respond, this Court treats Infuserve's motion as unopposed. Additionally, Infuserve demonstrates that there is "is no genuine dispute as to any material fact" and that Infuserve "is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Therefore, Infuserve's motion for summary judgment, (Doc. 86), is granted.

I. **BACKGROUND**

In his Amended Complaint, Doherty alleged that he suffers from Lyme disease and that he treated the disease with Rocephin, a drug created and distributed by Infuserve. Am. Compl. ¶¶ 3, 7. From July 2014 to January 2017, Doherty used the drug without "severe or adverse reaction." *Id.* ¶¶ 10, 12. But on February 22, 2017, Doherty began experiencing "severe symptoms" after taking Infuserve's Rocephin for four days. *Id.* ¶¶ 30–31. Doherty's

2

symptoms allegedly included optic neuritis, tachycardia, cranial facial pain, and tinnitus, which are some of the symptoms associated with central nervous system damage. *Id.* ¶ 34. Although Doherty allegedly began experiencing symptoms on February 22, 2017, he first went to a local clinic on February 24, 2017, and he was allegedly "misdiagnosed" with a migraine. *Id.* ¶ 32. Doherty then went to an emergency room where he allegedly "learned that a number of the symptoms had manifested as a result of" the Rocephin that he purchased from Infuserve. *Id.* ¶ 33.

Doherty's amended complaint alleges that Infuserve's Rocephin caused Doherty permanent physical damage, mental damage, and financial damage. *Id.* ¶¶ 44, 56, 63, 94. In Count I of his Complaint, he alleges that Infuserve is strictly liable because it designed and manufactured defective Rocephin and because it failed to adequately warn Doherty of the dangers of its defective Rocephin. *Id.* ¶¶ 36–44. In Count III, Doherty alleges that Infuserve breached the implied warranty of merchantability and the implied warranty of fitness for a particular purpose by selling him defective Rocephin. *Id.* ¶¶ 50–56. Next, Doherty alleges that Infuserve acted negligently in Count IV. *Id.* ¶¶ 57–63. Finally, in Count VI, Doherty alleges that Infuserve violated FDUTPA by engaging in unfair, fraudulent, or deceptive conduct and representing Rocephin to have characteristics and benefits that it does not have. *Id.* ¶¶ 75–94; *see also* Order on Mot. to Dismiss at 12.

3

On April 29, 2022, Doherty was deposed under oath in connection with this lawsuit. Doherty Dep. (Doc. 86-1) at 1:3–4:15. Doherty testified that he was taking several medications other than Rocephin at the time of the incident, including: Gabapentin, Ambien, Amitriptyline, and Klonopin. *Id.* at 29:5–29:23. Additionally, Doherty took full doses of the allegedly defective Rocephin near midnight on February 18, 2017, midnight on February 19, midnight on February 20, and midnight on February 21. *Id.* at 102:4–103:7. But Doherty did not experience any symptoms until February 22, 2017. *Id.* at 103:8–103:13.

Doherty's complaint alleges that he "ceased taking all medication" after he began experiencing symptoms. Am. Compl. at ¶ 31. But Doherty admitted in his deposition that he took Oxycodone—prescribed for his sister—between February 22 and February 25 to deal with the painful symptoms he was experiencing. Doherty Dep. at 103:25–105:19. Doherty saw a nurse practitioner at a clinic on February 24 and later went to an ER on the night of February 26. *Id.* at 105:24–108:21; 111:15–111:20. Although Doherty alleged in his complaint that he learned at the ER that his symptoms were caused by the Rocephin, Am. Compl. at ¶ 33, during his deposition, Doherty said that the ER doctor thought Doherty had only "a migraine or something" and provided Doherty with a migraine patch. Doherty Dep. at 120:20–121:9. Doherty also admitted that he would not be surprised to

4

learn that he was only diagnosed with an allergic reaction and anxiety at the ER. *Id.* 124:6–124:16.

In his Complaint, Doherty alleged that Infuserve manufactured the Rocephin with equipment that is cleaned using hydrochloric acid. *Id.* ¶¶ 19–20. Doherty also alleged that Infuserve prepared the Rocephin "at the same location where acid and other chemicals which are capable of burning human tissue are stored." *Id.* ¶ 21. But during his deposition, Doherty admitted several times that he did not have any evidence that there was any toxin, including hydrochloric acid, in the Rocephin that he received from Infuserve. Doherty Dep. at 132:14–134:19.

Notably, Doherty submitted the allegedly defective Rocephin for testing at ARL Bio Pharma, Inc. *Id.* at 115:24–118:17. Infuserve hired Dr. Bruce Goldberger, Ph.D. F-ABFT—the "Chief of the Forensic Medicine, Department of Pathology, Immunology, and Laboratory Medicine in the College of Medicine at the University of Florida"[1]—to analyze the results of ARL's tests. *See* Aff. of Dr. Bruce Goldberger ¶ 3 (Doc. 86-3); ARL Laboratory Report of Analysis (Doc. 86-2). Goldberger reviewed ARL's laboratory report, the medical records from Doherty's hospital visits, and Doherty's deposition, among other

---

[1] Goldberger's curriculum vitae is not attached to his affidavit. *See* Aff. of Dr. Bruce Goldberger (Doc. 86-3) at 5–34. It appears that Infuserve mistakenly attached another curriculum vitae to Goldberger's affidavit. *See id.* Accordingly, this Court relies on paragraph 3 of Goldberger's affidavit to establish his credentials. *See id.* ¶ 3.

evidence. Aff. of Dr. Bruce Goldberger ¶ 6. He concluded, "The testing conducted by ARL Bio Pharma, Inc., is appropriate for the assessment of contamination of pharmaceutical drugs and solutions. The analysis in this matter demonstrates that there was no contamination." *Id.* ¶ 8.

In its motion for summary judgment, Infuserve argues that "to date, Plaintiff has not conducted any discovery nor disclosed any expert who will opine as to whether the Rocephin was contaminated with hydrochloric acid." Mot. for Summ. J. at 15. As already noted, Doherty failed to respond to the motion for summary judgment.

## II. LEGAL STANDARD

Summary judgment is appropriate if no genuine dispute of material fact exists, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A fact is material if it might affect the outcome of the suit under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The movant always bears the initial burden of informing the district court of the basis for its motion and identifying those parts of the record that demonstrate an absence of a genuine issue of material fact. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). When that burden is met, the burden shifts to the nonmovant to present evidentiary materials (e.g., affidavits, depositions, exhibits, etc.) demonstrating that there is a genuine issue of material fact, which precludes summary judgment. *Id.* A moving party

is entitled to summary judgment if the nonmoving party "fail[s] to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The Court reviews the record evidence as identified by the parties and draws all legitimate inferences in the nonmoving party's favor. *See Sconiers v. Lockhart*, 946 F.3d 1256, 1262 (11th Cir. 2020); *Dareing v. Bank of Am. Corp.*, 705 F. App'x 882, 885 (11th Cir. 2017) (per curiam). Here, to the extent that the record is disputed or capable of multiple inferences, the Court draws them in favor of Doherty.

## III. ANALYSIS

Infuserve presents affirmative evidence that the Rocephin provided to Doherty was not defective. Comparatively, Doherty admitted at his deposition that he did not have any evidence that the Rocephin was contaminated. Additionally, Doherty failed to respond to Infuserve's motion for summary judgment and thereby failed to present any other evidence suggesting that Infuserve sold Doherty defective Rocephin or violated FDUTPA through engaging in a deceptive act or an unfair trade practice that caused his injury. Thus, there is no genuine dispute of material fact and Infuserve is entitled to judgment as a matter of law.

### A. Strict Liability, Negligence, and Breach of Implied Warranty (Counts I, III, and IV)

To succeed on Counts I, III, and IV, Doherty must prove that the Rocephin was defective and that the defect caused his injury. In Count I, Doherty alleges that Infuserve is strictly liable because its Rocephin is designed and manufactured improperly and because Infuserve failed to adequately warn Doherty of the dangers of its Rocephin. Am. Compl. ¶¶ 36–44. To succeed on his strict liability claims, Doherty must prove that the Rocephin "was defective or created an unreasonably dangerous condition . . . that proximately caused [Doherty's] injury." *Edward M. Chadbourne, Inc. v. Vaughn*, 491 So. 2d 551, 553 (Fla. 1986) (citing *West v. Caterpillar Tractor Co.*, 336 So. 2d 80, 87 (Fla. 1976)); *Jennings v. BIC Corp.*, 181 F.3d 1250, 1255 (11th Cir. 1999) ("Under the theory of strict products liability adopted in *West v. Caterpillar Tractor Co.*, a product may be defective by virtue of a design defect, a manufacturing defect, or an inadequate warning." (citations omitted)).

Next, to succeed on Count III—Breach of the Implied Warranties of Merchantability and Fitness for a Particular Purpose, Am. Compl. ¶¶ 50–56—Doherty must again prove that the Rocephin was defective and that this defect caused Doherty's injury. *See Kia Motors Am. Corp. v. Butler*, 985 So. 2d 1133, 1140 (Fla. 3d DCA 2008); *Amoroso v. Samuel Friedland Fam. Enterprises*, 604 So. 2d 827, 833 (Fla. 4th DCA 1992).

8

Finally, to prove that Infuserve was negligent, *see* Count IV, Am. Compl. ¶¶ 57–63, Doherty must allege that the Rocephin was unreasonably dangerous and that the Defendant's negligence while manufacturing or marketing the Rocephin caused Doherty's injury. *See Williams v. Davis*, 974 So. 2d 1052, 1056 (Fla. 2007) (holding that causality and breach of the duty of care are elements of a negligence claim); *Siemens Energy & Automation, Inc. v. Medina*, 719 So. 2d 312, 315 (Fla. 3d DCA 1998) ("Because the jury found in its verdict that Siemens did not manufacture a defective product, this precluded any findings of strict liability or negligence . . .").

In his amended complaint, Doherty alleges one theory of defectiveness and causality: That the Rocephin was contaminated with toxic chemicals, that Infuserve failed to properly warn Doherty of this potential danger, and that the contaminated Rocephin caused Doherty's injuries. *See generally* Am. Compl. But Infuserve provided evidence disproving Doherty's allegations. ARL Bio Pharma tested the Rocephin that Infuserve provided to Doherty, and Dr. Goldberger read the results and concluded that ARL's tests conclusively demonstrated that the Rocephin was not contaminated. *See* Aff. of Dr. Bruce Goldberger; ARL Laboratory Report of Analysis. Doherty also admitted four times at his deposition that he did not have evidence that the Rocephin was contaminated. Doherty Dep. at 132:14–134:19. Further, Doherty failed to respond to Infuserve's motion for summary judgment or otherwise provide evidence contradicting ARL's results and

9

Goldberger's conclusions. Because Doherty fails to rebut Infuserve's evidence with any evidence of his own, there is no genuine issue of material fact as to whether the Rocephin was defective and Doherty thus has failed to make a sufficient showing of an essential element to prove Counts I, III, and IV.

### B. The Florida Deceptive and Unfair Trade Practices Act (Count VI)

This Court construes Count VI of Doherty's complaint as claim under FDUTPA, Fla. Stat. §§ 501.201–501.213. *See* Am. Compl. ¶¶ 75–94; Order on Mot. to Dismiss at 12. Count VI incorporates Doherty's earlier factual allegations about the contaminated Rocephin and Infuserve's failure to warn Doherty, Am. Compl. ¶ 75, and alleges that Infuserve violated FDUTPA by:

> a. Representing that goods or services have characteristics, ingredients, uses, benefits, or quantities that they do not have;
>
> b. Advertising goods or services with the intent not to sell them as advertised; and
>
> c. Engaging in fraudulent or deceptive conduct that creates a likelihood of confusion and/or misunderstanding.

*Id.* ¶ 79. Finally, Doherty alleges that he has suffered permanent physical and mental damage, and financial damages due to the FDUTPA violation. *Id.* ¶ 94.

The elements of an FDUTPA claim are "(1) a deceptive act or unfair trade practice; (2) causation; and (3) actual damages." *Dolphin LLC v. WCI Cmtys., Inc.*, 715 F.3d 1243, 1250 (11th Cir. 2013) (per curiam) (citing *Rollins, Inc. v. Butland*, 951 So.2d 860, 869

10


(Fla. 2d DCA 2006)). Infuserve contends that Doherty has made "no showing" that Infuserve's "representations or advertisements caused him actual injury, much less how that injury 'directly flowed' from the deceptive act or unfair practice." Mot. for Summ. J. at 17 (emphasis omitted).

Infuserve is correct. Doherty alleges in his complaint that he was deceived by Infuserve's representations regarding the safety of Rocephin and that this misrepresentation caused damages. Am. Compl. ¶¶ 75–94. Doherty's only theory explaining why the Rocephin was unsafe is that it was contaminated by toxic chemicals. *See id.* ¶¶ 1–35. But Doherty fails to make a sufficient showing that the Rocephin contained any abnormal chemicals or toxins. *Compare* Aff. of Dr. Bruce Goldberger; ARL Laboratory Report of Analysis, *with* Doherty Dep. at 132:14–134:19. Moreover, Doherty fails to provide, or allege even allege, any other evidence that could reasonably be construed to constitute a deceptive act or unfair trade practice that caused the injuries that he alleges in Count VI. Accordingly, summary judgment is required on Count VI.

\* \* \*

Infuserve separately argues that summary judgment is appropriate because Counts I, III, IV, and VI are barred by the applicable statutes of limitations. Mot. for Summ. J. at 4–10. But the Court need not address Infuserve's affirmative, statute-of-limitations defenses because Infuserve succeeds on the merits.

IV. CONCLUSION

Accordingly, Infuserve's motion for summary judgment, (Doc. 86), is **GRANTED**. Infuserve's motion for oral argument on the motion for summary judgment, (Doc. 88), is **DENIED as moot**. The Clerk is directed to enter **JUDGMENT** in favor of Infuserve America, Inc.; to terminate any pending motion and deadline; and to **CLOSE** this case.

**ORDERED** in Tampa, Florida, on April 27, 2023.

*Kathryn Kimball Mizelle*
Kathryn Kimball Mizelle
United States District Judge